Vasun BUFORD  *v.*  STATE of Arkansas

CR 05-1233                                243 S.W.3d 300

Supreme Court of Arkansas
Opinion delivered November 16, 2006

*Alvin Schay*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Vasun Buford was convicted of rape and sentenced to life imprisonment as a habitual offender. Our jurisdiction is therefore proper pursuant to Ark. Sup. Ct. R. 1-2(a)(2) (2006). Buford does not challenge the sufficiency of the evidence supporting his conviction, but does raise two points of error on appeal. First, he argues that the circuit court erred in failing to sustain his objection when the prosecutor elicited opinion testimony about the victim's credibility. Second, Buford contends that the circuit court erred in failing to grant his motion for a new venire at his retrial on the rape charge. Finding no reversible error, we affirm.

Buford's first trial ended in a mistrial because of a hung jury. At a pretrial hearing prior to the second trial, Buford's attorney made a motion for a new venire, arguing that it would be potentially dangerous and prejudicial for Buford to be tried by the same panel. Expressing concerns regarding posttrial publicity, Buford's attorney noted that excused jurors were not admonished by the court to avoid reading newspapers. Headlines regarding Buford's previous trial ran in local newspapers for two days, including the prosecutor's comment that the jury was 11-1 in favor of the State. The circuit court denied Buford's motion for a new venire, but also excluded those who had served on the jury at the first trial from being called, including the alternate.

J.M., the victim, is developmentally disabled and was thirteen years old at the time of the offense. At trial, he testified that he went with a couple of other boys to Buford's apartment to help him clean. After they left, J.M. returned to the apartment by himself, knocked on the door, and Buford let him in. J.M. then described how Buford perpetrated the crime of rape in graphic detail. Before J.M. ran out of the apartment, Buford threatened to kill him if he told anyone what happened. Two witnesses for the State, B.W. and E.R., ages twelve and eight respectively, testified at trial and corroborated J.M.'s testimony, stating that they observed the incident through a window.

Carman Howell testified as a child-abuse expert based upon her experience as the director of the child-abuse clinic at St. Joseph's Hospital in Hot Springs, as a forensic interviewer certified by the American Professional Society on the Abuse of Children, and as a former child-abuse investigator for the Arkansas State Police. Buford objected to her testifying as an expert, stating "Last time, they attempted to have her give testimony as to whether or not J.[M.] was telling the truth, and I'm not sure her expertise would allow her to testify to that." According to Howell, when a child alleges that he or she has been sexually abused, she uses two methods to determine if the child is telling the truth. After developing a rapport with the child, she first has the child define the words "truth" and "lie." Second, Howell administers the Lyon-Saywitz Truth/Lie Assessment method, which is used throughout the United States to determine if a child knows the difference between the truth and a lie and if he or she understands the consequences of telling the truth and lying. Howell testified that she is also trained to observe the child's body language to determine whether the child is telling the truth. At trial, the prosecutor asked Howell to give her opinion on whether the victim was telling the truth about the incident at Buford's apartment. Buford immediately objected, but the circuit court overruled the objection. Howell then responded as follows: "I believe that J.[M.] is telling the truth. I believe that J.[M.] is credible." When the prosecutor followed up by repeating "[a]nd you believe that — ," Howell interjected, "Wholeheartedly."

Ultimately, the jury convicted Buford of rape and sentenced him to life imprisonment. He now appeals that conviction.

### 1. Opinion on the credibility of the witness

For his first point on appeal, Buford argues that the circuit court erred in failing to sustain his objection when the prosecutor elicited opinion testimony about the victim's credibility. Specifically, Buford asserts that the circuit court violated Arkansas law by allowing Howell to testify that the victim was telling the truth and was credible. We agree.

The decision to admit or exclude evidence is within the sound discretion of the trial court, and we will not reverse the trial court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Rollins v. State,* 362 Ark. 279, 208 S.W.3d 215 (2005). The general test for admissibility of expert testimony is whether the testimony will aid the trier of fact in

understanding the evidence or in determining a fact in issue. Ark. R. Evid. 702 (2006)[1]; *Stout v. State*, 320 Ark. 552, 898 S.W.2d 457 (1995); *Utley v. State*, 308 Ark. 622, 826 S.W.2d 268 (1992). An important consideration in determining whether the testimony will aid the trier of fact is whether the situation is beyond the ability of the trier of fact to understand and draw its own conclusions. *Utley v. State, supra.*

In *Hinkston v. State*, 340 Ark. 530, 10 S.W.3d 906 (2000), we analyzed the issue of expert testimony on the credibility of a witness. There, Hinkston argued that an expert witness's testimony was admissible to explain the inconsistencies in his statements to police officers. *Id.* Reiterating our holding in *Utley v. State, supra*, we noted that where the introduction of expert testimony would invade the function of the jury or where it does not help the jury, such testimony is not admissible. *Hinkston v. State, supra.* Further, we noted that expert testimony on the credibility of witnesses is an invasion of the jury's province. *Id.* As a result, we found that the circuit court properly found that the testimony would have invaded the province of the jury. *Id.*

Similarly, in *Logan v. State*, 299 Ark. 255, 773 S.W.2d 419 (1989), the essence of the expert testimony was that the victim was telling the truth. In that case, the State elicited expert testimony by asking hypothetical questions. *Id.* In noting that it was prejudicial error to admit the testimony, we said, "It is clear from the hypothetical questions and answers that the [expert witnesses] were informing the jury that in their opinion the victim was telling the truth." *Logan v. State*, 299 Ark. at 257, 773 S.W.2d at 420.

Additionally, in *Russell v. State*, 289 Ark. 533, 712 S.W.2d 916 (1986), the appellant argued that the trial court erred in allowing the witness to answer whether the victim's statements were consistent with sexual abuse because the subject matter was not beyond the common knowledge of the jury. *Id.* Again, noting the general test for the admissibility of expert testimony, we held that "lay jurors were fully competent to determine whether the history given by the victim was consistent with sexual abuse." *Russell v. State*, 289 Ark. at 534, 712 S.W.2d at 917. As a result, this

---

[1] Rule 702 of the Arkansas Rules of Evidence states, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

court concluded that the circuit court erred in admitting the testimony, but the State's case against the defendant was so strong, the error was not of consequence and no prejudice resulted. *Id.*

■ In the instant case, the testimony failed the general test of admissibility — whether it would aid the trier of fact in understanding the evidence or in determining a fact in issue. The lay jurors were fully competent to determine whether J.M. was telling the truth. There is no doubt that the elicited testimony invaded the province of the jury because the type of testimony at issue is not the kind that is beyond the ability of the trier of fact to understand and draw its own conclusions. Indeed, the jury alone determines the credibility of the witnesses and apportions the weight to be given to the evidence. *Parker v. State*, 333 Ark. 137, 968 S.W.2d 592 (1998). As a result, we conclude that the circuit court erred in admitting the challenged testimony.

■ Even when a circuit court errs in admitting evidence, we have held that when the evidence of guilt is overwhelming and the error is slight, we can declare that the error was harmless and affirm the conviction. *Barrett v. State*, 354 Ark. 187, 119 S.W.3d 485 (2003); *Russell v. State, supra.* To determine if the error is slight, we can look to see if the defendant was prejudiced. *Barrett v. State, supra.* Although we have concluded that the circuit court erred in admitting the testimony of the expert witness, we further conclude that the error was slight. It is well settled that uncorroborated testimony of a rape victim is sufficient to support a conviction. *Williams v. State*, 363 Ark. 395, 214 S.W.3d 829 (2005). Here, testimony elicited at trial provided graphic details of the rape. J.M. testified that Buford raped him, and independent eyewitness testimony corroborated J.M.'s description of what Buford did to him. Thus, any prejudice resulting from the circuit court's error was minimal and, in light of the independent eyewitness testimony, the error was slight. In other words, the evidence of Buford's guilt is overwhelming, and the error is slight. We therefore declare that the circuit court's error in admitting opinion testimony on the victim's credibility was harmless.

### 2. The venire

For his second point on appeal, Buford argues that the circuit court erred in failing to grant his motion for a new venire

at his retrial on the rape charge. Citing the Sixth Amendment to the United States Constitution and the Arkansas Constitution, he claims that the posttrial publicity, mainly the prosecutor's comment regarding the jury vote, violated his right to a fair trial and an impartial jury at his second trial.

We have held many times that arguments not raised at trial will not be addressed for the first time on appeal. *Hinkston v. State, supra.* Parties cannot change the grounds for an objection on appeal, but are bound by the scope and nature of their objections as presented at trial. *Id.* At trial, Buford never argued that his constitutional rights under the Sixth Amendment to the United States Constitution and the Arkansas Constitution were violated when the circuit court denied his motion for a new venire. We do not consider arguments, even constitutional ones, raised for the first time on appeal. *Hinkston v. State, supra.* Because this argument is not preserved for appellate review, we are precluded from addressing it.

### 3. Rule 4-3(h)

In compliance with Ark. Sup. Ct. R. 4-3(h) (2006), an examination of the transcript has been made and there are no reversible errors on any rulings adverse to Buford.

Affirmed.